ALBANY,
August. 1820.

SMITH
v.
ALLEN.

---

## SMITH *against* ALLEN.

THIS was an action of *assumpsit*, tried at the *New-York* Sittings, in *April*, 1819, before Mr. Justice *Yates*.

The counsel for the plaintiff, in opening the cause, stated that the action was brought to recover the sum of five thou-sand dollars, being the amount of a mistake made by the de-fendent in charging the plaintiff with two sums of five thou-sand dollars each, mentioned in two receipts, the one signed by *Janna Taylor*, the agent of the plaintiff, and the other by the plaintiff, each bearing date the 29th *October*, 1814, when only one of them ought to have been charged to the plaintiff. That *William D. Cheever* was a contractor for the army on the north-western frontier, the plaintiff a sub-con-tractor, and the defendant a general agent of the contractor. That on the 29th of *October*, 1814, in addition to sundry advances during that month, the defendant delivered to *J. Taylor*, at *Canandaigua*, a draft on *Isaac Townsend & Co.* the subject matter of the suit was a co-partnership contract between him and the plaintiff. The objection ought to be made at the trial.

Where two persons are jointly concer-ned in a con-tract of sale, their interest may be severed by a parol a-greement, on good conside-ration; and one of them, after this disso-lution of their joint concern, is a competent witness for the other, in rela-tion to a mat-ter growing out of such contract; such witness having parted with all his interest in the contract. After a trial and verdict for the plaintiff, it is too late for the defendant to object, that

ALBANY,
August, 1820.

SMITH
v.
ALLEN.

merchants in *Albany*, in favour of *A. Dox*, for five thousand dollars, and took from him a receipt for the sum of five thousand dollars. That it was the understanding between the plaintiff and defendant, that when the receipts of *Taylor* were taken, the receipts of the plaintiff were to be substituted in their stead ; and accordingly, the plaintiff gave to the clerk of the defendant, at *Buffalo*, where the business was transacted, and the accounts settled, a receipt drawn by the clerk, dated at *Canandaigua*, for the draft which was intended as a substitute for the receipt of *Taylor.* That in the settlement of the accounts between them, in *October*, the receipts of *Taylor*, for the five thousand dollars, and the receipt of the plaintiff, for the draft for the same sum, which was given as a substitute for the receipt of *Taylor*, were both charged to the plaintiff, by mistake.

*Taylor* was then called as a witness on the part of the plaintiff; but he was objected to by the counsel for the defendant, on the ground that he was a co-partner with the plaintiff in the contract made with *Cheever*, and in the transaction in relation to which he was called to testify. To show this he called *James S. Whyte* as a witness, who testified, that in a conversation at which *Taylor* and *Smith* were both present, on the 29th of *July*, 1814, they admitted that they were concerned together in the contract which *Smith* had made with *Cheever :* and the judge thereupon rejected *Taylor*, on the ground of interest. The plaintiff's counsel then called the son of the plaintiff, who testified, that the plaintiff purchased *Taylor's* interest in the contract, for the defendant; and that *Taylor* was afterwards employed as the agent of the plaintiff, at two dollars per day. The judge then decided that *Taylor* was a competent witness, and he was accordingly sworn. *Cheever* and several other witnesses were also sworn and examined, and numerous receipts, accounts and vouchers were produced and proved, which evidence it is unnecessary to state here, as the material parts will be found in the opinion delivered by the Court. It was agreed that the suit was commenced in *December*, 1816, after the verdict was obtained in a cause brought by *Cheever* against the plaintiff. (*Vide* 15 *Johns. Rep.* 276.) The jury found a verdict fo the plaintiff, for 6,581 dollars, damages.

A motion was made to set aside the verdict, and for a new trial.

*T. A. Emmet*, and *D. B. Ogden*, for the defendant.

*Wells*, and *P. W. Radcliff*, for the plaintiff.

WOODWORTH, J. delivered the opinion of the Court. *Janna Taylor*, called as a witness for the plaintiff, was objected to as interested, and admitted by the Judge; the question now is, was he competent? It appears, that in *July*, 1814, *Taylor* was concerned with the plaintiff in the contract made with *Cheever*; but in *September* following, according to the testimony of *John M. Smith*, the plaintiff bought out *Taylor*, for the defendant, as the witness understood, and afterwards employed him, at two dollars a day, and paid him accordingly. I perceive no well-founded objection to the sufficiency of this proof; it is no where contradicted, and although no writings are signed, *Taylor's* interest might be severed by parol founded on good consideration. The witness is not to be discredited, because the parties have not chosen to dissolve their connection in the most usual way; besides, one fact is stated, which very satisfactorily shows, that *Taylor's* situation was changed. From an acknowledged partner, he afterwards appears in the character of an agent, at a *per diem* allowance, which he received. The proof, then, of dissolution, was sufficient. But, it is said, *Taylor's* interest was purchased for the defendant, and, therefore, the action cannot be sustained, because, in that event, the plaintiff and defendant became partners. (*a.*) What weight there would have been in this objection, had it been made at the trial, we need not inquire. It is too late to be now urged, for the first time. The application should have been for a nonsuit, that the cause might have been arrested as soon as the discovery was made; the omission must be considered a waiver.

(*a*) Vide *Murray* v. *Bogert*, 14 *Johns. Rep.* 318. *Marquand* v *New-York Manufacturing Company*, 17 *Johns. Rep.* 525.

*Taylor*, then, being a competent witness, and *Smith's* testimony not establishing any fact that, in this stage of the cause, can be relied on to defeat the plaintiff's action, the inquiry is, whether the verdict is against law, or the weight of evidence.

In the case of *Cheever* v. *Smith and others*, (15 *Johns. Rep.* 276.) the now plaintiff claimed an allowance for 5,000 dollars, charged to him on the 29th day of *October*, 1814, by the defendant, who was *Cheever's* agent, when in fact it had not been received. This claim was objected to, on the ground, that no notice of the alleged mistake had been given to *Cheever* previously to his settlement with *Allen*, in *July*, 1815, at which time, after allowing him the 5,000 dollars in question, there appeared to be a large balance due, which *Cheever* paid. The principle decided by the Court in that case, is this :' " If a man deals with another's agent, and gives the agent a receipt for a sum of money which he had a right to pay, and on the faith of that receipt the principal settles with his agent, and pays him money, the party giving the receipt cannot lie by until after the settlement between the principal and the agent, and then charge the principal with the payment of the same sum again. *Allen* is answerable to the defendant, as for money had and received, if it can be shown that he has been allowed 10,000 dollars, as paid to the defendants, when only 5,000 dollars were received by them." From this decision, it appears, that the count for money had and received is adapted to the present case ; and the only remaining question is, whether there is sufficient evidence of the mistake alleged, to warrant the finding of the jury. At the trial, oral and written testimony were produced on both sides. It is not probable, that any new light would be thrown on the subject by a second trial. Be that, however, as it may, if the weight of testimony is with the verdict, it ought not to be disturbed, to admit the chance of trying the complexion of the cause before another jury. On the 29th day of *October*, 1814, *Taylor*, as agent of the plaintiff, received of the defendant a draft on Messrs. *Isaiah Townsend & Co.*, in favour of *Abraham Dox*, on which *Taylor* received the money from *Dox*, and on the same day, at *Canandaigua*, gave to the de-

fendant a receipt for 5,000 dollars. The plaintiff was then absent at *Buffalo.* The arrangement was, that when receipts were given by *Taylor*, they were not to be charged to the plaintiff, but were to be taken up by him, and his receipts substituted in their place. In the present instance, that arrangement did not probably take place; and if the mistake of 5,000 dollars was made, I think it must have happened in this way : the plaintiff having given to *Allen* a receipt for the same amount, and of the same date, and for the same money that had been paid to *Taylor*, neglected to take up *Taylor's* receipt at the time, and *Allen* holding two receipts for the same sum, and finding, that by his entries the clerk had charged *Taylor's* receipt, (although contrary to the stipulation,) as well as that given by the plaintiff, may have been led into a misapprehension ; and believing that 10,000 dollars had been advanced, when, in fact, there had been no more than 5,000 dollars, afterwards in his settlement with *Cheever*, produced these vouchers as evidence of his disbursements, and had them allowed. After the recovery by *Cheever* against *Smith*, the receipts were probably delivered over to the plaintiff, for the purpose of enabling him to detect the error, if any existed. I have indulged in this conjecture, because it no where appears in the case, how the plaintiff came to the possession of *Taylor's* receipt. If it should be urged that when the plaintiff gave a receipt for 5,000 dollars, *Taylor's* receipt was taken up by him, I answer, this is not probable, because it was a necessary document for *Allen* to produce in his settlement with *Cheever*, if he claimed an allowance for both receipts. The general receipt, given at the end of the month, will not cover this sum, as will appear by an examination of the several charges made in the month of *October*, 1814. It appears, then, that a receipt bearing date, *Canandaigua, October* 29th, 1814, was given by *Smith* to *Allen*, for a draft on *J. & J. Townsend*, in favour of *Abraham Dox, for* 5,000 *dollars:* Was not this intended as a substitute for the one given by *Taylor ?* I think the evidence establishes this fact, *prima facie*, and that nothing has been made out by the defendant to disprove it. In the first place, it is rendered probable that it was for the same payment, because it

was agreed to exchange, and it may well be presumed that this was done in pursuance of such agreement ; but a more conclusive reason is this : *Taylor's* receipt, although not so expressed, was, in fact, given for a draft on the *Townsends*, in favour of *Dox*. *Smith's* receipt admits a draft in favour of the same person, and for the same amount, and dated on the same day. *Smith*, at the date, was at *Buffalo*, 90 miles distant. The presumption is strong, that it must have been signed subsequent to the day it bears date ; and if so, why was it made to correspond with the date of the receipt given by *Taylor*, unless intended to be a substitute for it ? If, in truth, *Smith's* receipt is for a distinct sum, *Allen* has not afforded any explanation for giving a date to the transaction different from the true one. But again : *Smith's* receipt was for a draft on *I. & J. Townsend* in favour of *Dox*, and for 5,000 dollars—so was *Taylor's* receipt How does it appear that they were in every respect similar ? If not intended as vouchers for the same sum, why were they not included in one receipt for 10,000 dollars ? It no where appears that two drafts for 5,000 dollars each, were drawn in favour of *Dox* on the same day, or at any time. It is highly improbable that there should be. The presumption is, that both are for the same advance, and the defendant was called on to repel the presumption. Why did he not prove by *Dox* or the *Townsends*, that two drafts were drawn, bearing the same date and for the same amount? This might have been done, it is fairly presumable; and the non-production of this testimony, in my mind, makes against the defence, until further explanation is given. I cannot disapprove of the verdict, but, on the contrary, I entirely concur in the conclusion the jury have drawn.

The intrinsic evidence in this case, arising from the transaction, goes far to show, that a mistake has happened ; the conduct of the parties is altogether at variance with the supposition, that ten thousand dollars were paid on the 29th of *October*, 1814. There is another fact established by the testimony of *Fort*, which I think important; he says, that " the general receipts, at the close of each month, formed the aggregate of the several receipts, which had been obtained for the moneys advanced, not only to the plaintiff, but

ALBANY,
August. 1829.

SMITH
v.
ALLEN.

to *Janna Taylor*, during the course of the month, and were then consolidated, for the purpose of simplifying the accounts between the parties, and preventing mistakes." Now, according to this, we expect to find the general receipt for the month of *October*, 1814, of an amount sufficient to include both the receipts for 5,000 dollars, if in truth both sums had been advanced. But the fact is otherwise. It appears by the statement of advances in the hand writing of *Fort*, the defendant's clerk, for the month of *October*, 1814, that including two sums of 5,000 dollars, charged on the 29th of *October*, the whole amount would be 19,800 dollars. But the general receipt given *October* 31st. 1814, which *Fort* says included all the receipts given for the month, is only 12,396 dollars and 18 cents. If this be so. then it is evident that all the sums charged by *Fort* were not allowed and included in the general receipt. Some of them must have been struck out.

From the facts made out in this cause, may we not fairly presume, that of the sums not included, the 5,000 dollars receipted was one ? But it is contended that *Smith* in *February*, 1815, on being questioned, said he was satisfied the mistake was his, and he had been in an error respecting the 5,000 dollars. *Hamlin*, a witness who was present heard the conversation, but did not hear the amount of the mistake mentioned. Allowing that *Whyte* is correct in supposing the conversation referred to the mistake of 5,000 dollars, and not to the sum of 1,000 dollars, respecting which there had been some suggestions, I think it vague and unsatisfactory. Acknowledgments or confessions are a species of testimony requiring strict scrutiny, and to be received with caution.

Besides, it will be remembered, that in *January*, 1815, the defendant's clerk requested the plaintiff not to mention the alleged mistake to Mr. *Thorn*, one of the principals, who was concerned with *Cheever*, as he did not wish the report of a mistake to be circulated. This may have been one cause that the plaintiff denied it to *Whyte* in the *February* following. *Fort* further says, that the plaintiff continued to insist on the mistake ; from all which there is reason to believe there was some misapprehension on the part of *Whyte* the witness.

ALBANY,
August, 1820.

I do not perceive that any inference unfavourable to the plaintiff can be drawn on account of this suit not being commenced earlier.

*Smith* claimed an allowance for the 5,000 dollars, in the suit with *Cheever*, and shortly thereafter commenced this action.

After an attentive examination of the facts, I have not discovered any ground for saying, that the verdict is either against law or the weight of evidence. The motion for a new trial must, therefore, be denied.

New trial denied.